UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT M. LAVELLE,** | : | **CIVIL ACTION** |
| **SUSAN M. LAVELLE,** | : | |
|     **Plaintiffs** | : | |
| | : | |
|     v. | : | |
| | : | |
| **M&T MORTGAGE CORPORATION,** | : | |
| **HANSEN FINANCIAL SERVICES,** | : | |
| **INC.,** | : | |
|     **Defendants.** | : | **No. 05-2144** |

Gene E.K. Pratter, J.        **Memorandum and Order**        August 11, 2006

Robert and Susan Lavelle, plaintiffs in this case, pursue a claim under the Truth in Lending Act. One of the defendants, M&T Mortgage Corporation ("M&T"), has moved to dismiss the Amended Complaint.[1] For the reasons delineated below, the motion will be granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

The claims that plaintiffs Robert M. Lavelle and Susanne M. Lavelle, husband and wife, assert against M&T and Hansen Financial Services, Inc. ("Hansen") arise from a loan transaction that occurred on September 26, 2002. Amended Compl. at ¶ 5. M&T is the mortgagee and current holder of a mortgage executed in connection with the loan transaction. Plaintiffs' Memorandum in Opposition to Motion to Dismiss ("Opposition Memorandum") at 1. Hansen acted as a broker in the transaction. Id. The proceeds from the loan allowed Mr. and Mrs. Lavelle to become full owners of real property located at 1006 Thousand Acre Road in

---

[1] The other defendant in this case, Hansen Financial Services, Incorporated, filed an answer to the initial Complaint but has neither answered nor moved to dismiss the Amended Complaint.

1

Sellersville, Pennsylvania (the "Property"), previously partially owned by the Estate of Helen Seachrist.  Amended Compl. at ¶ 5.

The Lavelles allege that at the time they entered into the loan transaction, Mrs. Lavelle, who was the daughter of Helen Seachrist, already owned a partial interest in the Property as an heir of Ms. Seachrist's.  Amended Compl. at ¶¶ 5, 7.  The Lavelles allege that this interest was shared with Mrs. Seachrist's other heirs, and that the purpose of the sale by the Estate to the Lavelles was to convey full title of the property to Mr. and Mrs. Lavelle.  Amended Compl. at ¶ 7; Plaintiff's Opposition Memorandum at 4.  The parties agree that at the time the loan was executed, Mr. Lavelle owned no interest in the Property.

On or about July 12, 2004, the Lavelles, through their counsel, sent a letter to M&T seeking to rescind the loan agreement, asserting that there were several material violations of the Truth in Lending Act that occurred in connection with the processing of the loan.  Amended Compl. at ¶ 9, Ex. C.[2]  On September 2, 2004, in a response to the July 12 letter, M&T asserted that (1) because Mrs. Lavelle never owned the Property, the loan transaction was a residential mortgage transaction which was exempt from rescission, and (2) even if Mrs. Lavelle was a part owner of the Property, the loan would still be considered a residential mortgage because the proceeds of the mortgage were used to purchase the Property from the other part owners. Amended Compl. at Ex. D.  Thus, M&T rejected the Lavelles' rescission request.

The Lavelles filed the initial complaint in this case on May 5, 2005, in which they

---

[2] The Lavelles included several attachments to their Complaint, including (1) a copy of the Settlement Sheet from the loan closing, (2) a copy of the Truth in Lending Disclosure Statement that was given to the Lavelles at closing, (3) a copy of the July 12, 2004 letter seeking to rescind the loan agreement, and (4) a copy of the response to the July 12, 2004 letter from M&T.

asserted three claims against M&T and Hansen. The Lavelles first alleged that the defendants violated the Truth in Lending Act ("TILA") because they failed to provide notice of the right to cancel the transaction. The Lavelles next alleged a violation of the Pennsylvania Credit Services Act, 73 Pa. C.S. §§ 2183, et seq.. Finally, the Lavelles alleged that because the lack of disclosure was calculated to create confusion and misunderstanding, they are entitled to treble damages under state law.

M&T filed its initial motion to dismiss the Complaint on July 15, 2005. However, after some discussions between the parties, the Lavelles agreed to remove M&T from the second and third counts of the Complaint, and sought leave to file an amended complaint. M&T's initial motion to dismiss was denied without prejudice, and the Lavelles filed the Amended Complaint on August 9, 2005. M&T then moved to dismiss the Amended Complaint.

In seeking to have the first count of the Amended Complaint dismissed, M&T relies on two primary, but interdependent, arguments. M&T first argues that the September 2002 loan transaction was a transaction for a residential home mortgage, as that term is defined under TILA, and was therefore exempt from the TILA notice requirements. Second, M&T argues that, presuming the claim was a residential home mortgage transaction, the claim is barred by the applicable statute of limitations.

**DISCUSSION**

    A.    **Standard of Review**

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994). The Court must accept as

true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff.  Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).  A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff.  Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).  In weighing a motion to dismiss a complaint, a court may consider "an indisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Steinhardt Group Inc. v. Citicorp, 126 F.3d 144, 144 (3d Cir. 1997).[3]

B.     **Statutory Period for Claims**

The issues presented in the Amended Complaint call for the consideration of two statutory limitation periods under TILA.  Section 1640(e) of TILA states that "[a]ny action under this section may be brought in any United States district court . . . within one year from the date

---

[3] In this case, as noted above, the Lavelles attached copies of the Truth-In-Lending Disclosure Statement and the Settlement Statement from the closing to the Complaint.  See Amended Compl. at Exs. A, B.  Theses documents are referred to in the Amended Complaint as those that were received to memorialize the loan transaction.  Amended Compl. at ¶ 6.  Because the Lavelles' claims are based on this document, and there is no dispute that the documents are authentic representations of the transaction at issue, the Court may consider them in deciding the present motion.  See, e.g., Nov. 2, 2005 Tr. at 4:9-18.

There were also several documents, including a signed copy of the Lavelles' loan application, attached by M&T to its motion.  At oral argument, counsel for M&T urged that the Court consider this document in deciding the motion because the Lavelles "need to rely on all of the closing documents" in order to state their TILA claim.  Nov. 2, 2005 Tr. at 9:19-20.  After a thorough review of the Amended Complaint, the Court concludes otherwise.  The substance of the Lavelles' complaint is that they were not given the proper notifications respecting disclosures required under TILA when they entered into the loan agreement with M&T and that M&T ignored their request for rescission.  Although the information on the loan application is certainly relevant in establishing M&T's defense and would be appropriately considered in a motion for summary judgment, the Lavelles' claims are not based on the information contained in the loan application.  Therefore, the Court will not consider that document in deciding this motion.

of the occurrence of the violation." 15 U.S.C. § 1640(e).  Additionally, under Section 1635(f), an obligor's right to rescind a transaction expires "three years after the date of consummation of the transaction or upon the sale of the property." 15 U.S.C. § 1635(f).  While the statute of limitations may be equitably tolled, the limitation of the right to rescind is definitive and finite – Section 1635(f) operates as a statute of repose so that the right to rescind unequivocally expires on the date three years after the transaction occurs.  Beach v. Ocwen Federal Bank, 523 U.S. 410, 418 (1998).

M&T argues that because the loan transaction was entered into on September 26, 2002, the Lavelles, in order to avoid the statute of limitations bar, had to bring this claim on or before September 25, 2003 – more than two years before the complaint was filed on May 5, 2005.  Conversely, the Lavelles argue that the Complaint and Amended Complaint were filed well within the statutory period because there is no claim of damages for lack of disclosure, but rather that their claim is for M&T's failure to honor their valid rescission request within 20 days of July 12, 2004, as is required under Section 1635(b).  Thus, the Lavelles argue that the statute of limitations period did not begin to run until at least August 1, 2004, and perhaps not until September 2, 2004 when M&T actually rejected their request for rescission.

In Bartholomew v. Northampton Nat'l Bank of Easton, 584 F.2d 1288, 1296 (3d Cir. 1978), the court stated that the statute of limitations with respect to the disclosure requirement of TILA begins to run "on the date that a contract to sell land is executed."  However, where the failure to honor a request for rescission is the basis of a plaintiff's complaint, courts within the Third Circuit have held that the statute of limitations does not begin to run until the time that a defendant was legally obligated to respond to the request.  See Canty v. Equicredit Corp. of

5

America, No. 01-5804, 2003 WL 21243268 at *2, n.4 (E.D. Pa. May 8, 2003) (noting distinction between rescission and lack of disclosure claim and distinguishing Bartholomew); Sherwood v. Serubo Cadillac Co., 514 F. Supp. 167, 168 (E.D. Pa. 1981) (same).  Therefore, to the extent that the Lavelles seek recovery based on M&T's failure to honor their rescission request, if that claim is otherwise valid, it would have been filed within the requisite statutory period.  Alternatively, if the transaction that the Lavelles entered into is found to be ineligible for rescission, the statutory limitation would be moot.

   C. **Whether the Loan is a Residential Mortgage Transaction**

  M&T argues that it was under no requirement to provide notice of the opportunity to rescind the loan transaction or to consider the Lavelles' rescission request as valid because the transaction is, under TILA, a residential mortgage transaction and that this type of transaction is exempt from such TILA requirements.  The Lavelles disagree, arguing that because Mrs. Lavelle had, pursuant to Pennsylvania estate law, acquired a partial interest in the Property, the loan transaction did not constitute a residential mortgage transaction.

  TILA requires lenders to make certain disclosures in consumer credit transactions where a security interest is retained or acquired in property used as the borrower's principal dwelling. Perkins v. Central Mortgage, 422 F. Supp. 2d 487, 489 (E.D. Pa. 2006).  TILA specifically states that:

> [e]xcept as otherwise provided in this section, in the case of *any consumer credit transaction in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended*, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures

required under this subchapter, whichever is later, by notifying the creditor, in accordance with the regulations of the Board, of his intention to do so.

15 U.S.C. § 1635(a) (West 2005) (emphasis added). However, TILA excepts residential mortgage transactions from the right of rescission and its related requirements. See 15 U.S.C. § 1635(e)(1).

Under TILA, a "residential mortgage transaction" is one "in which a mortgage, deed of trust, purchase money security interest arising under and installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(w) (emphasis added). The source of the present dispute arises from the meaning of the term "acquisition" as it is used in the statute.

The Lavelles argue that because Mrs. Lavelle owned a portion of the Property by inheritance prior to the initiation of the loan and mortgage involving M&T, the transaction would not, under their proposed interpretation of TILA, be considered a residential mortgage. The Lavelles specifically argue that through her inheritance, Mrs. Lavelle previously acquired an interest in the Property and that that acquisition was, pursuant to Regulation Z, sufficient to remove the transaction from the residential mortgage category.[4]

Because Mrs. Lavelle's alleged partial ownership of the Property is at the root of the

---

[4] In enacting TILA, Congress "delegated expansive authority to the Federal Reserve Board to elaborate and expand the legal framework governing commerce in credit." See Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 559 (1980). Regulation Z was the product of this delegation. See also 15 U.S.C. § 1604(a) ("[t]he Board shall prescribe regulations to carry out the purposes of this subchapter . . . these regulations . . . may provide for such adjustment and exceptions for any class of transactions, as in the judgment of the Board are necessary or proper to effectuate the purposes of this subchapter, to prevent circumvention or evasion thereof, or to facilitate compliance therewith").

present dispute, the Court must first consider whether Mrs. Lavelle holds such an interest. Because Mrs. Lavelle's interest in the Property does rely upon the terms set forth in Mrs. Seachrist's will,[5] the Court will consider this document (the "Seachrist Will") for the purpose of determining what, if any, interest in the Property Mrs. Lavelle had before the mortgage loan was originated.

The Seachrist Will provides that the residue of Mrs. Seachrist's estate, including "real, personal or mixed" property, was to be devised, "in equal shares, share and share alike, per stirpes, to my children. . . ."[6] Seachrist Will at 1. Under Pennsylvania law, legal title to a decedent's real estate "shall pass at his death to his heirs or devisees, subject, however, to all the powers granted to the personal representative by the code and lawfully by the will and to all orders of the court." 20 Pa. C.S.A. § 301(b) (West 2005); see also Jones v. LaSalle Nat'l Bank (In re Jones), No. 05-15197, 2004 WL 1924888 (Bankr. E.D. Pa. Jul. 27, 2004) ("under Pennsylvania law, title to real property passed to [the decedent's] heirs immediately upon his death"). Therefore, the Court finds that under both Pennsylvania law and the Seachrist Will, Mrs. Lavelle did acquire at least some interest in the Property upon the death of Mrs. Seachrist. However, for other purposes of this Motion, which will be discussed herein, that type of interest is undefined.

Having found that Mrs. Lavelle did own some type of partial interest, obtained through

---

[5] At oral argument on the motion and again in a supplemental memorandum, M&T provided a copy of Mrs. Seachrist's will, arguing that the document is a matter of public record and is necessary to support the Lavelles' claim.

[6] The Seachrist Will initially provides for the devise of this property to Walter Seachrist, Mrs. Seachrist's husband. However, Mr. Seachrist passed away in 1996, and the will provides for this contingency in the manner reflected. Seachrist Will at 1.

devise, in the Property, the Court must next consider whether this interest was sufficient to have taken the transaction outside the parameters of being considered a residential mortgage transaction under TILA. As stated above, a residential mortgage transaction under TILA is one in which a mortgage is created or retained in a consumer's principal dwelling "to finance the acquisition or initial construction of that dwelling." 15 U.S.C. § 1602(w); see also 12 C.F.R. § 226.2(a)(24). The Official Staff Interpretation to Regulation Z (the "Official Interpretation"), in addressing the meaning of the term "acquisition," states that "[residential mortgage] does not include a transaction involving a consumer's principal dwelling if the consumer had previously purchased and acquired some interest to the dwelling, even though the consumer had not acquired full legal title." 12 C.F.R. § 226, Supp. I at § 226.2(a)(24)(5)(i). The Official Interpretation goes on to provide examples of "new transactions involving a previously acquired dwelling" to include "an extension of credit made to a joint owner of property to buy out the other joint owner's interest." Id. at § 226.2(a)(24)(5)(ii). Given the Supreme Court's emphasis on the great Congressional deference expressly directed to the Federal Reserve Board, see footnote 4, supra, this Court is prepared to pay especially close attention to the Board's obviously efficacious pronouncement and interpretations.

      The Lavelles argue that Mrs. Lavelle's previous ownership through inheritance of a part of the Property establishes the mortgage transaction with M&T as a "new transaction" under TILA which extended credit to allow her to buy out the other joint owners' interest in the Property. M&T disagrees, arguing that the phrase "previously purchased and acquired" is quite clearly written in the conjunctive, requiring that any prior interest in real property must not only involve acquisition but also acquisition *by purchase*, for some consideration. Nov. 2, 2005 Tr. at

9

9:2-3. M&T further argues that the Official Interpretation refers to a "joint owner's" interest, and that, at most, Mrs. Lavelle would hold a tenancy in common in the Property with no right of survivorship. The distinction, counsel argues, is important because Mrs. Lavelle could not, in the same transaction, claim her benefit as a per stirpes sibling (i.e., an interest in the property), *and* claim that the transaction amounted to the purchase of the Property from a fellow joint owner. Nov. 2, 2005 Tr. at 11:25; 12:1-7. M&T finally argues that notwithstanding Mrs. Lavelle's partial ownership of the Property, the proceeds of the loan were used to acquire the Property and were not used for personal or family household purposes. Nov. 2, 2005 Tr. at 13:1-6.

The earnest research by each of the parties as well as the Court reveals that there is a dearth of case law addressing this specific issue, not only within the Third Circuit,[7] but also throughout the country.[8] Thus, this narrow issue appears to be one of first impression that

---

[7] Comment 5 to the Official Interpretation of Regulation Z was briefly considered by the court in Perkins v. Central Mortgage Co., 442 F. Supp. 2d 487, 488 (E.D. Pa. 2006). In Perkins, the plaintiffs, two years after entering into an initial loan to finance the purchase of land and the cost of constructing a new home there, obtained new financing from a different lender to pay off the first loan and complete the construction. In asserting that the second loan was not a residential mortgage transaction that was exempt from TILA rescission rights, the plaintiffs pointed to their having previously purchased and acquired an interest in the property, thereby triggering the definition set forth in Comment 5 of the Official Interpretation. Id. at 491-92. The Perkins court concluded that Comment 5 was not applicable there because the plaintiffs' claim related to construction financing, whereas Comment 5 "refers only to the acquisition of an ownership interest in a dwelling which presumably was already constructed at the time of the transaction." Id. at 491.

[8] The Court notes that in its Motion, M&T cited to three district court cases from outside of the Third Circuit to support its arguments. However, none of these cases specifically addresses the issue of whether a loan transaction to finance the acquisition of real property from the property's joint owners to a partial owner and a non-owner would fall outside the parameter of a "residential mortgage transaction." Rather, M&T cites to cases that support the argument that because the loan involved a "first lien" to finance the Lavelle's acquisition of the home, the transaction was exempt from TILA. See Eubanks v. Liberty Mge. Banking Ltd., 976 F. Supp. 171 (E.D.N.Y. 1997) (addressing whether pro se plaintiff could allege TILA violations against

10

requires the Court to interpret the provisions of TILA and Regulation Z.

Initially, the Court notes that M&T's argument with respect to the technical definition of a joint owner, as opposed to a tenant-in-common, is unhelpful. If Mrs. Lavelle inherited the property as a tenant-in-common, she would be one of several owners of a fractional part of an undivided estate. Common law principles dictate that any tenant-in-common may sell their portion of the estate or may bequeath their interest to another. United States v. Craft, 535 U.S. 274, 279-280 (2002); In re Sale of Property of Samuel Dalessio, 657 A.2d 1386, 1387 n.1 (Pa. Commw. Ct. 1995). Conversely, if Mrs. Lavelle was a joint tenant, she would own the entire Property along with her siblings, and would be unable to pass her rights to the Property to her heirs. Craft, 573 U.S. at 280. That is, a joint tenant holds a right of survivorship in the property and when one joint tenant passes away, the property belongs to the remaining joint tenants; there is no passage of the decedent joint tenant's interest to his or her heirs.

This distinction does not support the argument that M&T endeavors to make – that absent a right of survivorship in the Property Mrs. Lavelle could not have possessed an ownership interest in it. While these common law principles provide a much appreciated review of the law of real property, such distinctions do not dispose of the present issue and, in fact, serve to further blur the boundaries of the principles at play. That is, assuming that Mrs. Lavelle and her siblings do hold portions of the Property as tenants in common, Mrs. Lavelle's siblings could have sold

---

mortgagee after foreclosure sale of her home related to first mortgage); Heuer v. Forest Hill State Bank, 728 F. Supp. 1199 (D. Md. 1989) (finding that loan transaction entered into for the purpose of acquiring and installing mobile home on property was a residential mortgage transaction exempt from TILA notification); French v. Wilson, 446 F. Supp. 216 (D.R.I. 1978) (concluding that loan obtained for the purpose of moving already acquired home to a different lot was not a residential mortgage transaction). Thus, these cases are not particularly helpful to decide whether the Lavelles in their particular situation have a legitimate claim under TILA.

their interest to her, which is what the Lavelles allege.  Alternatively, if Mrs. Lavelle held her share of the Property as a joint tenant, rather than a tenant-in-common, then the transaction could not have expressed a sale of the Property from her siblings to her, absent a division of the Property into a tenancy-in-common and subsequent agreement to sell the siblings' individual shares.  See, e.g., Craft, 535 U.S. at 280.  Regardless of the actual underpinnings of the nature of the sale, this review of real property law leads to the conclusion that the term "joint ownership" as it is used in the Official Interpretation was not intended to be read in the common law sense of "joint tenancy" (since that legal principle could have easily been precisely invoked if so intended), but rather refers to individuals who might together share ownership in real property in some fashion.

Thus, the determinative question that the Court must consider is, pursuant to the terms of TILA, whether Mrs. Lavelle had previously purchased and acquired some interest in the Property as of the time that the Lavelles entered into the loan agreement with M&T, thereby removing the transaction from the classification of "residential mortgage."  The Court holds that the Amended Complaint does not state a claim sufficient to support the conclusion that the transaction was not a residential mortgage transaction under TILA.  In the Amended Complaint, the Lavelles allege that at the time they entered into the loan transaction that would allow them to become "full owners of the home," Mrs. Lavelle "previously owned" the Property "in part as an heir of her parents."  Amended Compl. at ¶ 5.  There is no allegation that Mrs. Lavelle had previously purchased an interest in the Property.  Thus, the Amended Complaint does not allege that Mrs. Lavelle had previously purchased and acquired an interest in the Property.

Although the Lavelles might assert that requiring purchase *and* acquisition is not logical,

as that would suggest that any individual who inherited real property would not be afforded a rescission notice with respect to any loan for which the real property was used as collateral, it must be noted that this interpretation of residential mortgage applies only where a loan is taken *to finance the acquisition* of real property.  That is, Comment 5 serves to remove a transaction from the residential mortgage category where an individual purchased a less than total share of real property and then subsequently decides to buy out the co-owner(s) of the property.  That is not the case here, where Mrs. Lavelle acquired a portion of the Property by inheritance.  For these reasons, Comment 5 does not apply in this case, and the Court concludes that the loan transaction in question was, under TILA, a residential mortgage transaction.  As such, the rescission provisions of Section 1635 do not apply to this transaction, and the Lavelles' claim that M&T is liable for not responding to their request for rescission is without merit.

        D.     **State Law Claims**

The Court notes that M&T is not named as a defendant in counts 2 and 3 of the Amended Complaint, in which the Plaintiffs allege violations of Pennsylvania statutory and common law.  Although the defendant named in those counts, Hansen, filed an answer to the original complaint, Hansen has neither filed an answer nor moved to dismiss the Amended Complaint.

The only basis for this Court's exercise of jurisdiction over these two state law claims is that of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  Section 1367 states that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. . . ." 28 U.S.C. § 1367.  There are, however, exceptions to the exercise of supplemental jurisdiction.  For example,

Section 1367(c)(3) allows a district court to decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it has original jurisdiction. In this case, because all of the federal claims will be dismissed, the Court exercises its discretion to decline the exercise of jurisdiction over the state law claims against Hansen.

**CONCLUSION**

For the reasons discussed above, the Motion to Dismiss the Complaint filed by M&T Mortgage Corporation shall be granted. An appropriate Order follows.


<u>S/Gene E.K. Pratter</u>
Gene E.K. Pratter
United States District Judge


August 11, 2006

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT M. LAVELLE,** | : | **CIVIL ACTION** |
| **SUSAN M. LAVELLE,** | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **M&T MORTGAGE CORPORATION,** | : | |
| **HANSEN FINANCIAL SERVICES,** | : | |
| **INC.,** | : | |
| **Defendants.** | : | **No.  05-2144** |

**O R D E R**

**AND NOW**, this 11th day of August, 2006, upon consideration of Motion to Dismiss the Amended Complaint filed by M&T Mortgage Corporation (Docket No. 10), the responses and replies thereto (Docket Nos. 11, 12, 16, 19, 23) and after oral argument on the Motion, it is **ORDERED** that the Motion is **GRANTED**.  For the reasons set forth in the accompanying Memorandum, the claims against all Defendants are dismissed and the Clerk of Court is instructed to mark this case as closed.

                                                    **BY THE COURT:**

                                                    **S/Gene E.K. Pratter**
                                                    **GENE E.K. PRATTER**
                                                    **United States District Judge**